UNITED STATES DISTRICT COURT
SOUTHERN DITRICT OF NEW YORK   MEMO ENDORSED

UNITED STATES OF AMERICA,
        Plaintiff

v.

Case No. 7:15-CR-00176

VECTOR ESTEBAN,
        Defendant



RECEIVED OCT 19 2022 U.S.D.C. W.P.

---

MOTION TO REQUEST TERMINATION OF SUPERVISED RELEASE PURSUANT
TO 18 U.S.C. SECTION 3583(e)(1)

---

Comes now Victor Esteban, defendant, ("Esteban" herein) to respectfully request this Court terminate the remaining portion of his supervised release.

In support thereof Esteban puts forth the following.

JURISDICTION:

This Court has jurisdiction pursuant to 18 U.S.C. Section 3583(e) to "terminate a term of supervised release...[at] any time after one year of supervised release pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation..." Id. See also, 18 U.S.C. Section 3564(c), both incorporating Federal Rules of Criminal Procedure (i.e. Rule 32.1(c)).

1

## RELEVANT FACTUAL BACKGROUND

Esteban was arrested on or about March 25, 2015 and charged with possession with intent to distribute and with conspiracy to possess with intent to distribute oxycodone and heroin in violation of 21 U.S.C. Sections 841(a)(1), 846 and 841(b)(1)(C). The conspiracy charged was based on a street level dealers purchasing, then selling small street quantities of the above stated drugs. Esteban ultimately pled guilty to the charges and in July, 2016 he was sentenced to a total of 87 months of incarceration to be followed by 4 years of supervised release.

Esteban was originally sent to FCI Otisville, NY a medium security facility. Esteban participated in numerous rehabilitation programs and had excellent conduct, which resulted in being transferred to a low level facility (Fort Dix, NJ). Esteban, again, exhibited excellent work record and progress reports while at Fort Dix, which resulted in an "out custody" classification and transfer to a Federal Prison Camp (FPV McKean, PA).

In April, 2020 Esteban completed the incarceration portion of his sentence and was sent to the halfway house, but was only given 6 months of halfway house time. At the time of Esteban's release the pandemic (COVID-19) was killing thousands of people per day throughout the New York City and surrounding area. Due to the pandemic, after 4 days in the halfway house, Esteban was put on home confinement and could not leave his house.

In October 2020 Esteban completed his halfway house/home confinement time and began working with Doordash, a California based company that works nationwide with independent suppliers to deliver groceries from affiliated stores. Esteban is still working with Doordash and doing will with the company.

In 2020 and 2021 during the pandemic, the supply chain suffered and the trucking industry became a viable career option. Esteban attended a CDL school (Heritage Auto School), that was sponsored and

2

paid for by the government. Heritage Auto School trains drivers, then supplies viable job options upon completion of the program. More importantly, the company stays in contact with past students who are driving and the current students obtain their CDL permit and get to go on the road with them and gain experience for when they become fully licensed. Currently, the restriction of supervised release to travel is preventing Esteban completing this portion of the program, hence the request for early termination of his supervised release so that he can pursue this career opportunity. Permission to leave the district normally takes at least 45 days. Trucking scheduling is unpredictable and can come at any time. Esteban has sent all of the Heritage Auto School documentation to his Probation Officer, Erica Cudina, who is in favor of his career choice.

In addition, Esteban has committed himself to being a benefit in his community. He often makes deliveries of food and medicines on a volunteer basis to elderly and medically disabled persons in his community, after he finishes his Doordash shift. When Esteban began working with Doordash in 2020 the pandemic was still raging in New York.

Esteban lives with his wife and his Daughter, Vaniya (2 years old) and son, Victor Esteban, III (11 Years old). Esteban also spends time with his siblings to rebuild his family ties with other members of his immediate family. Esteban is a devout family man as established by his excellent work ethic and continuing education to become a CDL licensed trucker to further support his family. Esteban has significant support from his family both while incarcerated and since his return to society.

Esteban has an opportunity to expand his transportation business by delivering interstate for Amazon, who is contracting numerous persons with CDL licenses. However the restrictive nature of supervised release will void this opportunity.

Esteban has completed 24 months of his 48 month term of supervised release. His conduct has been excellent as he has had no incidents and complied with all of the terms and conditions of supervision.

3

Esteban has maintained gainful employment throughout his supervision. Esteban's compliance and work ethic has received excellent reports from his Probation Officer, Erica Cudina. Based on the aforementioned Esteban has received positive recommendations from his Probation Officer throughout his term of supervised release. As such, Esteban has been on "low intensity" supervision and reports via email to his probation officer.

## APPLICABLE LAW:

Title 18 U.S.C. Section 3583(e) directs courts to consider the purposes of sentencing set forth in 18 U.S.C. Section 3553(a)(1), (a)(2)(B), (a)(2)(D), (a)(4), (a)((5), (a)(6) and (a)(7) in deciding whether to terminate a term of supervised release. The judicial conference has identified the following criteria to assess eligibility for early termination: "Officers should consider the suitability of early termination for offenders as soon as they are statutorily eligible. Here, Section 3583(e) sets the eligibility at "any time after the expiration of one year of supervised release." (3583(e)(1)).
The general criteria for assessing whether a statutorily eligible offender should be recommended to the Court as an appropriate candidate for early termination are as follows:

1. stable community reintegration (i.e. residence, family, employment);

2. progressive strides toward supervision objectives and in compliance with all the conditions of supervision;

3. no history of violence (e.g. sexual assaults, predatory behavior or domestic violence);

4. no recent arrest or convictions (including unresolved pending charges), or ongoing, uninterrupted patterns of criminal conduct;

5. no recent evidence of alcohol or drug abuse;

6. no recent psychiatric episodes;

4

7. no identifiable risk to the safety of any identifiable victim; and

8. no identifiable risk to the public safety based on the Risk Assessment Prediction Index (RPI)

See, Guide to Judiciary Policy, Vol. 8E, Chapter 3, Section 30.10(b), "Early Termination" (Monograph 109) (revised 2010).

Pursuant to the policy "there is a presumption in favor of recommending early termination for supervised defendants after the first 18 months if they are not career offenders, sex offenders, or terrorist" and they are "free from moderate or high severity violations." Id. Section 30.10(g).

Courts have long advised early termination of defendants that meet the above criteria. "Terminating appropriate cases before they reach full term saves resources and allows officers to focus on offenders who continue to pose the greatest risk of recidivism." Honorable Robert Holmes Bell, Chair of the Committee on Criminal Law of the Judicial Conference (Issuing a Memorandum to all United States District Judges, February 16, 2012). Judge Bell's Memorandum in 2012 noted that supervision cost approximately $3,938 per year, per case. This cost has increased exponentially.

Lastly, an Analysis by the Administrative Office of the Courts indicates that offenders who received early termination were "arrested less often, for less serious charges, and were sentenced to terms of imprisonment less often." Thus, "[f]rom a policy standpoint, it appears that the above criteria, when properly applied, does not jeopardize the public safety." Id.

Applying the above criteria to this case, Esteban's file establishes that he meets this criteria, thus is a candidate for early termination. Esteban has complied with all the terms and conditions of his supervised release. His Probation Officer can attest that he has had no problems throughout his 24 month period. Esteban has proven that he is no threat to public safety and, conversely, has been an asset to the community by volunteering his transportation services, free of charge, during the pandemic, in spite of the physical danger it presented of contraction of the virus to himself and his family.

Moreover, Esteban' age, (i.e. 34 years old, DOB, January 8, 1988), compliance with all the conditions of supervised release, his additional and continuous work in the community and his exemplary prison record and overall commitment to being a better person, should serve as proof positive of Esteban' commitment to becoming a better person and substantiate that he has no further interest, whatsoever, in crime and fulfills all the applicable Section 3553(a) factors favoring early termination.

Under parallel circumstances the case law favors early termination. See, United States v. Friend, Case No. 13-226 (W.D. PA 2019) (granting early termination of supervised release after Friend had served 21 of 36 months of supervision based on his age, compliance with all the conditions of supervision, although nothing exceptional, but meeting the criteria under Section 3553(a) and "Probation Department agreeing with the request"); United States v. Harris, 258 F. Supp. 3d (D.C. Dist. Ct. 2017) (reducing term of supervised release from 120 months to 60 months, time served after defendant served 5 of his 10 years in compliance with all the standard terms and conditions of supervised release); United States v. Epps, 707 F.3d 337 (D.C. Cir. 2013) (holding that early termination is appropriate where defendant has complied with his standard conditions and relief is warranted under the Section 3553(a) factors); United Stats v. Harris, 689 F. Supp. 2d 692 (S.D.N.Y. 2010) (granting early termination to eliminate obstacles to professional advancement and employment after consideration of the 3553(a) factors)); United States v. Rentas, 573 F. Supp. 2d 801 (S.D.N.Y. 2008) (granting relief finding defendant "law abiding behavior and review of 3553(a) factors favored early termination");

## CONCLUSION

For the foregoing reasons Esteban respectfully requests this Court grant his request for early

6

termination of his remaining term of supervised release.
Respectfully Submitted,

*Victor Esteban*

Victor Esteban, pro se
33 Old Route 202a
Lot 60a
Pomona, NY 10970

10/16/2022
Dated

Motion for early termination of supervised release is denied. While Mr. Esteban's compliance with the supervised release conditions is commendable, it is not extraordinary. Indeed, compliance is to be expected. Furthermore, Mr. Esteban has served less than half of his supervised release term, was convicted of serious criminal conduct, has a history of non-compliance with post-release sentences, and was deemed to be a high risk of recidivism by the probation office.

So Ordered.

10/31/22

7

## CERTIFICATE OF SERVICE

I, Victor Esteban, declare that on this 16th day of October, 2022 I served a copy of a Motion for termination of supervised release, to the following parties:

U.S. Attorneys Office
300 Quarropas Street
White Plains, NY 10601

I make this declaration with the understanding of the penalty of perjury, pursuant to 28 U.S.C. Section 1746.

Dated this 16Th day of October, 2022

*Victor Esteban*
Victor Esteban
33 Old Route 202a
Lot 60a
Pomona, NY 10970



U.S. POSTAGE PAID
WESTWOOD, NJ
07675
OCT 18, 22
AMOUNT
**$9.90**
R2305K140391-91



**UNITED STATES POSTAL SERVICE** | **PRIORITY® MAIL**

- Expected delivery date specified for domestic use.
- Most domestic shipments include up to $50 of insurance (restrictions apply).*
- USPS Tracking® included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

**FLAT RATE ENVELOPE**
ONE RATE ■ ANY WEIGHT

**TRACKED ■ INSU**—
EXPECTED DELIVERY DAY: 10/20/22
USPS TRACKING® #

PS00001000014
OD: 12 1/2 x 9 1/2
9505 5156 0147 2291 2597 28

FROM:
Victor Esteban
33 Old Route 22a
Lot 60a
Pomona, NY 10970

TO:
Clerk of The Court
U.S District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601



RECEIVED
OCT 19 2022
U.S.D.C.
W.P.